EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>José Aguayo Huertas<br><br>Peticionario | Certiorari<br><br>2006 TSPR 19<br><br>166 DPR _____ |

Número del Caso: CC-2004-562

Fecha: 3 de febrero de 2006

Tribunal de Apelaciones:

                    Región Judicial de Carolina

Juez Ponente:

                  Hon. Jorge L. Escribano Medina


Abogada de la Parte Peticionaria:

                  Lcda. Ana E. Andrade Rivera

Oficina del Procurador General:

                  Lcda. Luana R. Ramos Carrión
                  Procuradora General Auxiliar

Materia: Asesinato, Ley de Armas, Restricción a la Libertad, Escalamiento Agravado, Amenazas a Testigos

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

      v.

José Aguayo Huertas

    Peticionario

CC-2004-562

Certiorari

SENTENCIA

En San Juan, Puerto Rico, a 3 de febrero de 2006.

En el presente caso, se presentaron cargos contra el Sr. José Aguayo Huertas (el peticionario) por los delitos de asesinato en primer grado, amenaza a testigos, restricción de la libertad agravada, escalamiento agravado, y dos cargos por portación ilegal de armas.[1] El Tribunal de Primera Instancia determinó causa probable en todos los cargos. Luego de celebrada la vista preliminar, la defensa del peticionario presentó una moción de descubrimiento de prueba al amparo de la Regla 95 de Procedimiento Criminal, 34 L.P.R.A. Ap. II R. 95

---

[1] Estos cargos corresponden a los artículos 83, 239a, 131, 171 del Código Penal de 1974, 33 L.P.R.A. §§ 4002, 4435a, 4172, 4277 (2001), y el artículo 5.04 de la Ley de Armas, 25 L.P.R.A. § 414 (1999), respectivamente.

(2004), en la que solicitaba que el Ministerio Fiscal pusiera a su disposición varios informes, declaraciones, fotografías, actas, y cierta información sobre los testigos. Posteriormente, el Ministerio Fiscal presentó una moción al amparo de la Regla 95-A de Procedimiento Criminal, 34 L.P.R.A. Ap. II R. 95-A (2004), en la que solicitó, entre otras cosas, una copia de la grabación magnetofónica de la vista preliminar tomada por la defensa del peticionario. La defensa se negó a poner la referida grabación a disposición del Ministerio Público alegando que estaba exenta de descubrimiento, ya que era producto de su labor de representación legal ("work product").

El foro de primera instancia celebró una vista para discutir la posición de las partes sobre esta contención. Finalmente, el Tribunal de Primera Instancia acogió el planteamiento del peticionario y concluyó que la grabación estaba fuera del alcance del descubrimiento de prueba, por lo cual no tenía que ponerse a disposición del Ministerio Fiscal. Inconforme con esta decisión, el Ministerio Fiscal acudió vía recurso de *certiorari* ante el Tribunal de Apelaciones. Este foro emitió una sentencia en la cual revocó al Tribunal de Primera Instancia y ordenó a la defensa del peticionario descubrir la grabación objeto de la controversia, por entender que la misma no era producto de la labor de representación legal del peticionario.

De esta sentencia del Tribunal de Apelaciones recurre ante nosotros, mediante auto de *certiorari*, el Sr. José Aguayo Huertas. Como único error, señala que el foro apelativo se equivocó al resolver que la grabación hecha por su abogado durante la vista preliminar no constituía producto de la labor de representación legal ("work

product") de éste, y que por tanto, debía ser puesta a disposición del Ministerio Fiscal. Luego de examinar detenidamente el asunto, este Tribunal se encuentra igualmente dividido en cuanto a cuál es la decisión correcta para la controversia presentada en el caso de autos. Por esta razón, se expide el auto, se confirma el dictamen del Tribunal de Apelaciones, y se devuelve el caso al foro de instancia para que se continúe con los procedimientos.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo de Puerto Rico. El Juez Presidente señor Hernández Denton concurre "por entender que la decisión del Tribunal de Apelaciones es esencialmente correcta. La grabación magnetofónica del testimonio vertido en la vista preliminar no constituye producto de la labor del abogado exenta del descubrimiento de prueba porque no contiene pensamientos privilegiados, teorías legales, impresiones mentales, ni estrategias de la defensa, Regla 25 de Evidencia, 32 LPRA Ap. IV R. 25; Ades v. Zalman, 115 DPR 514 (1984); Hickman v. Taylor, 329 U.S. 495 (1947). Tal y como indica el Tribunal de Apelaciones, la grabación es una mera reproducción de la vista preliminar y de los eventos procesales allí ocurridos. Además, el propósito cardinal de las Reglas de Evidencia incluyendo las relacionadas al descubrimiento de prueba, es que aflore la verdad en todo procedimiento judicial, por lo que debemos evitar imponer trabas que impidan lograr este fin. Regla2 de Evidencia, 32 LPRA, Ap. IV R. 2. Por tanto, ordenaría a la defensa a entregarle la grabación al Ministerio Público." El Juez Asociado señor Fuster Berlingeri y la Jueza Asociada señora Rodríguez Rodríguez

concurren con lo expresado por el Juez Presidente. La Jueza Asociada señora Fiol Matta emitió Opinión Disidente a la cual se unen los Jueces Asociados señores Rebollo López y Rivera Pérez.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

Recurrido

v.

José Aguayo Huertas

Peticionario                              CC-2004-562  Certiorari


Opinión Disidente de la Jueza Asociada SEÑORA FIOL MATTA A LA CUAL
SE UNEN LOS JUECES ASOCIADOS SEÑORES REBOLLO LÓPEZ Y RIVERA PÉREZ

En San Juan, Puerto Rico, a 3 de febrero de 2006.

Contrario a la sentencia del Tribunal de Apelaciones, que se confirma por división de este Tribunal, resolvería que en esta etapa de los procedimientos la grabación que hizo la representación legal del acusado durante la vista preliminar no debe ponerse a la disposición del Ministerio Fiscal por la vía del descubrimiento de prueba.

I.

Los hechos pertinentes del presente caso, que no están en controversia, son los siguientes.  En abril de 2003,  se presentaron cargos contra el Sr. José Aguayo Huertas (en adelante, el peticionario) por los delitos de asesinato en primer grado

amenaza a testigos, restricción de la libertad agravada, escalamiento agravado, y dos cargos por portación ilegal de armas.[2] El Tribunal de Primera Instancia determinó causa probable en todos los cargos. Luego de celebrada la vista preliminar, la defensa del peticionario presentó una moción de descubrimiento de prueba al amparo de la Regla 95 de Procedimiento Criminal, 34 L.P.R.A. Ap. II R. 95 (2004), solicitando que el Ministerio Fiscal pusiera a su disposición varios informes, declaraciones, fotografías, actas, y cierta información sobre los testigos. Posteriormente, el Ministerio Fiscal presentó una moción al amparo de la Regla 95-A de Procedimiento Criminal, 34 L.P.R.A. Ap. II R. 95-A (2004), en la que solicitó, entre otras cosas, una copia de la grabación magnetofónica de la vista preliminar tomada por la defensa del peticionario. La defensa se negó a poner la referida grabación a disposición del Ministerio Público, alegando que estaba exenta de descubrimiento ya que era producto de su labor de representación legal ("work product").

Tras celebrar una vista para discutir la posición de las partes, el Tribunal de Primera Instancia acogió el planteamiento del peticionario y concluyó que la grabación estaba fuera del alcance del descubrimiento de prueba, por lo cual no tenía que ponerse a disposición del Ministerio Fiscal. Inconforme con esta decisión, el Ministerio Fiscal acudió vía recurso de *certiorari* al Tribunal de Apelaciones. Ese foro revocó al Tribunal de Primera Instancia y ordenó el descubrimiento de la grabación

---

[2] Estos cargos corresponden a los artículos 83, 239a, 131, 171 del Código Penal de 1974, 33 L.P.R.A. §§ 4002, 4435a, 4172, 4277 (2001), y el artículo 5.04 de la Ley de Armas, 25 L.P.R.A. § 414 (1999), respectivamente.

objeto de la controversia. De esta sentencia del Tribunal de Apelaciones recurre ante nosotros el Sr. José Aguayo Huertas, señalando, como único error, que el foro apelativo se equivocó al resolver que la grabación hecha por su abogado durante la vista preliminar no constituía producto de la labor de representación legal ("work product") de éste. El peticionario sostiene todo lo contrario y aduce, además, que el Ministerio Fiscal tuvo la oportunidad de grabar las incidencias de la vista preliminar, y a pesar de que nada se lo impidió, no lo hizo.

II.

En lo referente al descubrimiento previo al juicio a favor del Ministerio Público, la Regla 95-A de Procedimiento Criminal de Puerto Rico, establece que:

> (a) Previa moción del Ministerio Fiscal luego de que el acusado haya solicitado el descubrimiento de prueba bajo las cláusulas (3) y (4) del inciso (a) de la Regla 95, y dentro del término prescrito para someterla, el tribunal ordenará al acusado que permita al Ministerio Fiscal inspeccionar, copiar o fotocopiar el siguiente material o información que esté en posesión, custodia o control del acusado y que pretenda presentar como prueba en el juicio:
>
> > (1) Cualquier libro, papel, documento, fotografía u objetos tangibles.
>
> > (2) Cualquier resultado o informe de exámenes físicos o mentales y de pruebas científicas o experimentos realizados en relación con el caso en particular.
>
> (b) Esta regla no autoriza inspeccionar, copiar o fotocopiar records, correspondencia, escritos o memorandos que sean producto de la labor del acusado o del abogado del acusado en la investigación, estudio y preparación de su defensa, ni de cualquier comunicación hecha por el acusado, como tampoco de aquellas declaraciones hechas por el acusado, por los testigos o posibles testigos de la defensa o de El Pueblo para el acusado o para los agentes o

abogados del acusado. 34 L.P.R.A. Ap. II R. 95-A (2004).

Se puede colegir de lo citado que el descubrimiento de prueba a favor del Ministerio Fiscal permitido por esta regla se limita a reciprocar el descubrimiento de cierto tipo de evidencia solicitada por el acusado. E. L. Chiesa Aponte, Derecho Procesal Penal de Puerto Rico y Estados Unidos, Colombia, Ed. Forum, Vol. III, § 28.2, pág. 338. En síntesis, la defensa tiene la obligación de descubrirle prueba al Ministerio Fiscal siempre que:

1.   ésta sea materia pertinente, bajo el laxo estándar de pertinencia utilizado para el descubrimiento de prueba antes del juicio, véase E. L. Chiesa Aponte, Tratado de Derecho Probatorio, República Dominicana, Publicaciones JTS, Tomo I, § 4.4, pág. 237 (1998); Pueblo v. Rodríguez Sánchez, 109 DPR 243, 247 (1979); Pueblo v. Santa Cruz Bacardí, 149 D.P.R. 223, 232 (1999); E. L. Chiesa Aponte, Derecho Procesal Penal de Puerto Rico y Estados Unidos, op. cit., Vol. III, § 28.2, pág. 339;

2.   ésta no sea materia privilegiada según las Reglas de Evidencia, véase E. L. Chiesa Aponte, Tratado de Derecho Probatorio, op. cit., Tomo I, § 4.4, pág. 237;

3.   la prueba solicitada esté en posesión, custodia o control del acusado, Pueblo v. Calderón Álvarez, 140 D.P.R. 627, 641 (1996);

4.   la defensa del acusado pretenda presentar esa prueba en el juicio.

5.   el acusado le hubiera solicitado antes a la fiscalía ese mismo tipo de descubrimiento bajo la regla 95(a)(3) ó (4); y

6.   la prueba no sea producto de la labor del acusado o de su abogado o no sea una comunicación protegida según se establece en la misma regla 95-A(b).

No hay duda que la cinta magnetofónica que desea descubrir la fiscalía está en posesión de la defensa, es pertinente al caso, y no está cobijada bajo ninguno de los privilegios establecidos por nuestras Reglas de Evidencia. Por tanto, cumple con los tres primeros requisitos que

exige la Regla 95-A para poder ser descubierta a la fiscalía antes del juicio. En cuanto a los demás requisitos, para delinear sus contornos y entender el alcance del deber recíproco de descubrimiento que establece la Regla 95-A, es preciso estudiar el trasfondo histórico de esta regla y del descubrimiento de prueba en casos criminales en nuestra jurisdicción.

## III.

A causa de la naturaleza competitiva del sistema adversativo, el descubrimiento de prueba, en el campo penal, se regía en sus inicios por "la teoría deportista de la justicia". *Véase* Jerry E. Norton, Criminal Discovery: Experience Under the American Bar Association Standards,11 Loy. U. Chi. L.J. 661 (1980). Se entendía entonces que el sistema adversativo requería que los abogados obtuvieran por su cuenta toda la evidencia necesaria para probar sus casos, y que aquél que lo hiciera con suficiente diligencia sería el vencedor en el juicio. Se pensaba que esta competencia entre los abogados propendía a que surgiera la verdad durante el juicio. Por tanto, esta teoría "deportista" del proceso desincentivaba cualquier tipo de descubrimiento de prueba. De hecho, en la jurisdicción federal, antes de que se aprobaran las Reglas de Procedimiento Criminal el descubrimiento de prueba en el campo criminal, salvo contadas excepciones, era prácticamente inexistente. *Véase* Lester E. Orfield, <u>Federal Criminal Procedure under the Federal Rules</u>, The Lawyers Co-operative Publishing Company, Vol. 2, § 16:5, pág. 506 (1966).

En Puerto Rico la situación era igual. El sistema californiano de procedimiento penal que adoptamos en 1902 se sustentaba en el modelo adversativo y "la teoría deportista de la justicia" y, por tanto, no proveía para realizar ningún tipo de descubrimiento de prueba en los casos criminales. *Véase* Código de Enjuiciamiento Criminal de Puerto Rico de 1902 ed. 1935 (1935); Historial 34 L.P.R.A. § 1 (1971). No obstante, amparándonos en los derechos contenidos en reglas de carácter procesal y probatorio vigentes en la época, en los preceptos de la Carta de Derechos de la Constitución de Puerto Rico y en el ideal de la búsqueda de la verdad, los tribunales puertorriqueños fuimos abriendo ciertos espacios para ello. *Véase* Pueblo v. Cortés, 79 D.P.R. 818, 826-28 (1957); Pueblo v. Ribas, 83 D.P.R. 386, 389-92 (1961).

El Código de Enjuiciamiento Criminal de 1902 estuvo vigente hasta 1963, cuando se adoptaron las Reglas de Procedimiento Criminal de Puerto Rico, siguiendo el modelo de las reglas federales de procedimiento criminal de 1946 que habían incorporado al modelo procesal criminal estadounidense un limitado descubrimiento de prueba en favor del acusado.[3] Al hacerlo, adoptamos también una nueva visión del descubrimiento de prueba en el campo penal. Respondimos de esa forma a las nuevas tendencias interpretativas de la Constitución, a los reclamos de los abogados de defensa, quienes exigían que se liberalizara el descubrimiento de prueba para poder representar adecuadamente a sus clientes y a las críticas del sistema adversativo estadounidense que era considerado más una

---

[3] *Véase* la Regla 16 de las Reglas de Procedimiento Criminal Federal de 1946; Lester E. Orfield, *op. cit.*, Vol. 2, § 16:9, pág. 516.

competencia que una auténtica búsqueda de la verdad. *Véase* Lester E. Orfield, *op. cit.*, Vol. 2 § 16:4, pág. 505.

No hay duda que el derecho del acusado a descubrir prueba tiene una base constitucional sólida en el derecho del acusado a defenderse.[4] Sin embargo, la introducción de este derecho a las reglas de procedimiento criminal trajo también un reclamo del Ministerio Fiscal. Éste sostuvo que se le colocaba en desventaja y solicitó, por tanto, que se adoptara una regla de descubrimiento liberal que abandonara "la teoría deportista de la justicia" y permitiera el descubrimiento de prueba a favor tanto de la fiscalía como de la defensa. *Véase* Pueblo v. Tribunal Superior, 99 D.P.R. 98, 104 (1970); Pueblo v. Rodríguez Aponte, 116 D.P.R. 653, 666 (1985*);* Jerry E. Norton, *supra*, pág. 662. Estos nuevos reclamos enfrentaban un escollo constitucional: el derecho del acusado a no auto-incriminarse. Véase Jerry E. Norton, *supra*, págs. 662-63. También se confrontaban con la inexorable realidad de que es al Estado a quien le corresponde probar más allá de toda duda razonable la culpabilidad de un acusado, y por tanto, a quien le corresponde obtener la prueba necesaria para ello utilizando sus recursos y no los del acusado. *Véase* Pueblo v. Rosaly Soto, 128 D.P.R. 729, 739 (1991).

En 1966, estas preocupaciones llevaron al gobierno federal a adoptar un modelo de descubrimiento de *quid pro quo*. De acuerdo a este modelo, la defensa viene obligada a reciprocar ciertos pedidos de descubrimiento que haga la fiscalía.[5] Otras jurisdicciones estatales, como California,

---

[4]     Sobre el alcance constitucional del descubrimiento de prueba a favor del acusado, *véase* Pueblo v. Rodríguez Sánchez, 109 D.P.R. 243, 246 (1979).

[5]     Véase Regla 16(b) de Procedimiento Criminal Federal; Jerry E. Norton, *supra*, págs. 663-64.

asumieron posturas más liberales y comenzaron a incluir entre sus reglas procesales reglas de descubrimiento de aviso previo ("advance notice") para la fiscalía. Véase, Jerry E. Norton, *supra*, págs. 663-64. Estas reglas proveen mecanismos para que se le anticipe a la fiscalía cierta información sobre testigos, exámenes o algunas defensas. Una modalidad de este tipo de reglas se adoptó en Puerto Rico en 1963 en la Regla 74 de Procedimiento Criminal.[6] Con esta regla, Puerto Rico intentó colocarse en la vanguardia en cuanto al descubrimiento de prueba en casos criminales. Sin embargo, el alcance de este descubrimiento de aviso previo para la fiscalía era muy limitado, por lo que no representó un gran avance en la liberalización del sistema de descubrimiento criminal puertorriqueño.

No fue hasta 1988 que realmente comenzó la liberalización del sistema de descubrimiento de prueba en el área penal. En ese año, se reformó la regla de descubrimiento de prueba de las Reglas de Procedimiento Criminal de 1963.[7] Con esta enmienda se reiteró el derecho

---

[6]   Dicha regla exige que se anticipen las defensas de coartada y de incapacidad mental, y se proporcione cierta evidencia a la fiscalía, al tiempo que establece una obligación recíproca de esta última con la defensa de proveerle la evidencia que utilizará para refutar las defensas.

[7]   La regla de descubrimiento incorporada en 1963 disponía:

Previa moción del acusado sometida en cualquier momento después de haberse presentado la acusación, el tribunal podría ordenar al fiscal que produzca para ser inspeccionados, copiados o fotografiados por el acusado o su abogado, determinados objetos, libros, documentos y papeles que no fueren declaraciones juradas, con excepción de la declaración del propio acusado, que El Pueblo hubiese obtenido del acusado o de otras personas mediante orden judicial o de otro modo y que pudieren ser necesarios para la preparación de la defensa del acusados, independientemente de que

constitucional del acusado a tener un descubrimiento a su favor y se amplió el alcance del mismo. Además, en esa reforma se introdujeron las Reglas 95-A y 95-B, 34 L.P.R.A. Ap. II R. 95-A, 95-B (2004). La primera regla, que siguió el modelo de la regla 16(b) de Procedimiento Criminal Federal,[8] se incorporó con el fin de reconocer estatutariamente un limitado descubrimiento de prueba a favor del Ministerio Fiscal, acogiendo así el principio federal del descubrimiento de prueba criminal *quid pro quo*. La segunda se adoptó con el fin de regular el proceso de descubrimiento de manera detallada en la esfera penal. Hoy día, más de quince años después de su adopción, no se ha precisado el alcance de estas modificaciones, a excepción de los primeros tres criterios que enumeramos antes. A continuación analizamos los demás requisitos establecidos en la Regla 95-A.

A. Que se trate de prueba que la defensa del acusado pretenda presentar en el juicio

Según este criterio, el Ministerio Fiscal sólo tiene derecho a descubrir prueba que vaya a ser presentada en el juicio. Esto implica que queda fuera del descubrimiento de prueba antes del juicio la prueba recopilada por la defensa con la intención de utilizarla en otras etapas del proceso que no sean el juicio, así como la prueba *colateral* o *no-sustantiva* que posea la defensa, entiéndase

---

El Pueblo se propusiere ofrecerlos en evidencia o de que los mismos fueren admisibles en evidencia. La orden especificará el tiempo, lugar y manera de hacer la inspección, de sacar las copias o tomar las fotografías y podrá prescribir los términos y condiciones que el tribunal estimare justos. 34 L.P.R.A. Ap. II R. 95 (1971).

[8] *Véase* E. L. Chiesa Aponte, Derecho Procesal Penal de Puerto Rico y Estados Unidos, *op. cit.*, Vol. III, § 28.2, pág. 338 (1993).

prueba que no va a ser utilizada para probar los elementos de la causa de acción. La intención de la regla es que las partes estén adecuadamente preparadas **para el juicio**, y que éste discurra de manera rápida y sin inconvenientes. *Véase* Exposición de Motivos Ley núm. 58 del 1ro de julio de 1988. Descubrir evidencia que no se usará en el juicio o que no constituye **prueba verdaderamente sustantiva** no propicia ese objetivo.[9] Por el contrario, podría entorpecer la labor de los abogados en las etapas anteriores o posteriores al juicio. Además, sería una intromisión injustificada en la labor de representación legal de los abogados, que está protegida por la misma Regla 95-A.[10]

Detrás de este esquema se encuentra primeramente el objetivo consagrado en nuestra Constitución y en las Reglas de Procedimiento Criminal de que el proceso penal sea rápido y ágil. *Véase* Const. E.L.A. Art. II § 11; Regla 64 Procedimiento Criminal, 34 L.P.R.A. Ap. II R. 64 (2004). Permitir el descubrimiento de evidencia *colateral* o *no-sustantiva* antes del juicio abriría la puerta para descubrir una cantidad enorme de información que no es necesaria para la adecuada preparación de los abogados en el pleito.[11] Además, convertiría el proceso penal en un

---

[9]     Por consiguiente, no se podría descubrir antes del juicio evidencia que se acopie con el propósito de utilizarla para impugnar la prueba testifical de la parte contraria, para la identificación o autenticación de cierta evidencia, para probar o impugnar la competencia de un testigo, o para realizar un *voir dire* para la calificación de un perito.

[10]     *Véase* el acápite c de esta sección.

[11]     El análisis de las disposiciones de la regla 95-B, 34 LPRA Ap. II R. 95-B (2004), en conjunto con las otras reglas de procedimiento criminal y las reglas de evidencia que regulan el descubrimiento de prueba, nos lleva a concluir que la prueba que puede ser descubierta bajo la regla 95-A es prueba sustantiva a presentarse en el juicio. Si se incluyera bajo esta regla tanto la prueba sustantiva como la *no-sustantiva* o la *colateral*, la Regla 74 de procedimiento Criminal y las Reglas 8 y 47 de Evidencia mencionadas carecerían de sentido y de aplicación.

procedimiento lento y susceptible de ser entorpecido continuamente por requerimientos de descubrimientos de prueba. Esto está en clara contraposición con la naturaleza del proceso penal en nuestra jurisdicción.

En segundo lugar se encuentra la noción de que el descubrimiento resulta innecesario y hasta superfluo cuando no hay certeza sobre el uso de la prueba en el juicio. El derecho al descubrimiento de prueba está cimentado en que sólo se justifica entrometerse en el expediente de los abogados contrarios cuando esto es **necesario para evitar sorpresas injustificadas durante el juicio** y se propicia la adecuada presentación de los casos por ambas partes. *Véase* McCormick on Evidence (J.W. Strong, et. al.), $5^{ta}$ ed., Minesota, West Group, § 28.2, pág. 148 (1999). Descubrir evidencia *no-sustantiva* o *colateral* en nada propicia estos objetivos. Este tipo de prueba no cambia la forma en que los abogados presentarían sus casos, ni modifica sustancialmente el tipo o la cantidad de evidencia que los abogados, a su mejor criterio, presentarían en el juicio.

Además, debemos recordar que el descubrimiento de prueba antes del juicio se permitió originalmente con la intención de brindarle a las partes la oportunidad de prepararse para refutar la prueba de sus contrarios y agilizar de este modo el juicio. No se concibió con el propósito de descubrir las estrategias de los contrincantes. Para esto, las Reglas de Evidencia regulan el descubrimiento de prueba durante el juicio.[12]

---

[12] Las Reglas de Evidencia proveen suficientes salvaguardas para evitar que la imposibilidad del descubrimiento de la evidencia *no-sustantiva* o *colateral* antes del juicio represente durante el juicio dilaciones o sorpresas indebidas a la parte contraria o un impedimento

B. Que el acusado haya solicitado antes al Ministerio Público el mismo tipo de descubrimiento

Este quinto criterio recoge la novedosa norma del descubrimiento *quid pro quo* a favor del Ministerio Fiscal. De acuerdo a esta modalidad, el Ministerio Público tendrá derecho a solicitar el descubrimiento de prueba científica, documental, o demostrativa cuando la defensa haya solicitado ese mismo tipo de prueba al amparo de la Regla 95 de Procedimiento Criminal. E. L. Chiesa Aponte, Derecho Procesal Penal de Puerto Rico y Estados Unidos, *op. cit.*, Tomo III, § 28.2 pág. 338; Pueblo v. Calderón Álvarez, *supra*, 640 (1996). Es pertinente señalar que, a pesar que esta regla establece que se puede descubrir prueba documental y demostrativa, esto no significa que se pueda descubrir prueba de declaraciones que tenga la defensa en papeles, grabaciones o cualquier otro objeto tangible que las pueda recoger. Las declaraciones no son parte de este tipo de evidencia.[13] *Véase* McCormick on

---

para que ésta se pueda preparar adecuadamente para rebatir la prueba que se presente. Por ejemplo, la regla 47, 32 L.P.R.A. Ap. IV R. 47 (2001), dispone que en casos en que se utilicen declaraciones anteriores para impugnar algún testigo, el abogado que conduce el contra-interrogatorio deberá "sentar las bases" antes de la impugnación, y de ser necesario deberá descubrir la declaración a la parte contraria. *Véase* U.S. v. Nobles, 422 U.S. 225. Igualmente, la Regla 8 de Evidencia, 32 L.P.R.A. Ap. IV R. 8 (2001), permite descubrir prueba cuando la declaración anterior que se traía sólo con el propósito de impugnar se utiliza luego como prueba sustantiva según lo permite la Regla 63 de Evidencia, 32 L.P.R.A. Ap. IV R. 8 (2004), o en caso de que se utilice prueba que no pudo ser descubierta antes del juicio porque no lo permitían las reglas de descubrimiento o se advino en su conocimiento luego del descubrimiento previo al juicio.

[13] El professor McCormick se refiere a la evidencia demostrativa en general, incluida la documental de la siguiente forma:

> There is a type of evidence which consists of things, e.g., weapons, whiskey bottles, writings, and wearing apparel, **as distinguished from the assertions of witnesses (or hearsay declarants)**

Evidence, § 212 pág. 338; Jerry E. Norton, *supra*, pág. 682.

Realmente, el descubrimiento de declaraciones es muy limitado aun cuando es a favor de la defensa. Hoy día, al amparo de la regla 95, el descubrimiento de las declaraciones en las etapas previas al juicio se limita a las declaraciones juradas de testigos que hayan declarado en la vista preliminar y a las declaraciones juradas del acusado. Reglas 95(a)(1), 95(a)(2) de Procedimiento Criminal, 34 L.P.R.A. Ap. II. R. 95 (2004). De hecho, en los orígenes de la regla sólo se tenía acceso a las declaraciones del acusado.[14]

Las declaraciones que tenga la defensa de testigos en el caso están fuera del alcance de la Regla 95-A, ya que no son parte de ese "algo por algo" que constituye el *quid pro quo* de la regla. La reciprocidad que dispone la Regla 95-A se refiere a los incisos 3 y 4 de la regla 95(a). Éstos se refieren, a su vez, exclusivamente a prueba científica, demostrativa y documental en su acepción más fiel. R. 95(a)(3)(4), 34 LPRA Ap. II, R. 95 (2004).

C.   Que la prueba no sea producto de la labor del acusado
o del abogado o una comunicación protegida

Este criterio protege de descubrimiento a la prueba que sea producto de la labor de representación legal del abogado ("work product") o de la labor del propio acusado. Protege así mismo a las comunicaciones hechas por cualquier testigo a la defensa y las comunicaciones o

---

about things.  Most broadly viewed, this type of evidence includes all phenomena which can convey a relevant firsthand sense impression to the trier of fact, **as opposed to those which serve merely to report secondhand the sense impressions of others.** McCormick on Evidence, *op. cit.*, §212 p. 338 (énfasis suplido).

declaraciones hechas por el acusado a su abogado. La última categoría equivale al privilegio abogado-cliente, mientras que las anteriores se ubican todas bajo la inmunidad de la labor de representación legal del abogado ("work product").

No obstante, la Regla 95-A le ofrece a la prueba bajo esta última categoría una protección mayor que la que es usual bajo la doctrina del "work product". Con mucha probabilidad, esta mayor protección se deba a que nuestro ordenamiento prohíbe al Ministerio Fiscal interrogar los testigos de la defensa (artículo 11 del Código de Enjuiciamiento Criminal, 34 LPRA § 11 (2004)), mientras que se permite a la defensa entrevistar a los testigos del Ministerio Público que voluntariamente accedan a ello. Hoyos Gómez v. Tribunal Superior, 90 D.P.R. 201, 204 (1964). Véase E. L. Chiesa Aponte, Derecho Procesal Penal de Puerto Rico y Estados Unidos, *op. cit.*, Tomo III, § 28.2, págs. 340-41. Además, la segunda categoría amplía la protección del "work product" al incluir la labor del acusado dentro de la exclusión de prueba susceptible de ser descubierta y al reconocerlo así como poseedor de la inmunidad. La interpretación que usualmente han dado los tribunales a esta doctrina reconoce solamente al abogado como poseedor de la inmunidad, aunque extiende ésta también a la la labor de los agentes del abogado. *Véase* B. E., Bergman, et al., Wharthon´s Criminal Evidence, 15[ta] ed., West Group, Vol. 3, § 11:30, pág. 104 (1999).

Como se puede colegir, la regla 95-A recoge en su cláusula de exclusión esencialmente los privilegios o las inmunidades hermanas de "work-product" y  del privilegio abogado cliente, que han desarrollado los tribunales para

---

[14]      *Véase* el escolio 6.

proteger la relación de los abogados con sus clientes y propender a que los clientes gocen de una representación adecuada y efectiva. Véase, R. S. Hunter, Federal Trial Handbook: Criminal, 4[ta] ed., Thomson-West, §§ 50:15-50:16, págs. 877-78 (2005); E. S. Epstein, et al., The Attorney-Client Privilege and the Work-Product Doctrine, 2[da] ed., EE.UU., American Bar Association, pág. 99 (1989).

No es necesario referirnos al privilegio abogado-cliente para resolver el presente caso. Sin embargo, ya que se ha planteado en este caso que conceder lo solicitado por el Ministerio Público violaría la inmunidad bajo la doctrina del "work product", mirémosla más de cerca. Esta doctrina, que ha presentado serias controversias en el campo penal, surgió y se desarrolló en el campo civil. *Véase* V. K. Yamaguchi, Discovery and the Work Product Doctrine, 11 Loy. U. Chi. L. J. 863, 863-64 (1980); E. S. Epstein, et al. *op. cit.*, págs. 100-01. Sin embargo, se ha reconocido que su aplicación en el campo penal es aún más vital para el funcionamiento de este sistema. R. S. Hunter, *op. cit.*, pág. 878; U.S. v. Nobles, *supra*, pág. 238. Además de los objetivos que mencionáramos, la inmunidad de la labor legal del abogado pretende alentar y preservar nuestro sistema adversativo. También intenta prevenir la litigación indolente y despreocupada y evitar que los abogados se recuesten de la labor del abogado de la parte contraria. *Véase* National Union Fire Ins. v. Murray Sheet Metal, 967 F.2d. 980, 985 (4[to] Cir. 1992; Scouters v. Albrecht Grocery Co., 15 F.R.D. 55, 58 (1953); L. Gold, Evidence: A Structured Approach, EE.UU., Aspen Publishers, pág. 570 (2004).

La doctrina de "work product" distingue entre el trabajo que forma parte de la labor rutinaria del abogado

y el trabajo que recoge las opiniones, las impresiones legales y el esfuerzo mental del abogado. Véase Hickman v. Taylor, 329 U.S. 495, 511 (1947); In re San Juan Dupont Plaza Hotel Fire Litigation, 859 F.2d. 1007, 1014 (1988); Sporck v. Peil, 759 F.2d 312, 316 (3rd Cir.), 474 U.S. 903 (cert. denegado); E. S. Epstein, et al., *op. cit.*, pág. 102; B. E. Bergaman, *op. cit.*, § 11:30, pág. 102. La primera categoría incluye la prueba preparada o recolectada por el abogado o sus agentes en anticipación a un litigio. La segunda categoría recoge los procesos mentales del abogado vertidos en objetos tangibles o en la estructuración estratégica de su prueba para su presentación durante el juicio. *Véase* B. E. Bergaman, *op. cit.*, § 11:30, pág. 102; E. S. Epstein, et al., *op. cit.*, págs. 109-30, 139-45; U.S. v. Pepper's Steel & Alloys, Inc., 132 F.R.D. 695, 697-98 (S.D. Fla. 1990).

Estas dos categorías se protegen de maneras distintas. La jurisprudencia protege la primera categoría de manera más laxa que la segunda porque el conflicto de intereses entre el descubrimiento y la protección a la labor del abogado es menor. Para descubrir evidencia que fue preparada o recolectada por el abogado o sus agentes en anticipación a un litigio se requiere que se demuestre una necesidad sustancial y un impedimento extraordinario que no permita a la parte contraria conseguirla sin recurrir al descubrimiento previo al juicio. Sin embargo, los documentos o la prueba que recogen los procesos mentales del abogado son por norma general inmunes, siempre y cuando no se demuestre una situación extraordinaria[15] que requiera permitir un descubrimiento

---

[15] Situaciones extraordinarias serían: 1. que la conducta del abogado está en controversia o 2. que se

delimitado. B. E. Bergaman, op. cit., § 11:30 pág. 103; E. S. Epstein, et al., op. cit., págs. 130-53; U.S. v. Pepper's Steel & Alloys, Inc., *supra*, págs. 697-99.

En síntesis, la Regla 95-A, dispone que no se podrá descubrir evidencia que fue recolectada por la defensa en anticipación al juicio a menos que la fiscalía demuestre una necesidad sustancial y un impedimento extraordinario para conseguirla de otras formas. Tampoco se podrán descubrir los documentos o la prueba que recogen los procesos mentales de la defensa en ausencia de situaciones extraordinarias, siempre y cuando la defensa no renuncie a la inmunidad, en cuyo caso puede descubrirse.[16]

IV.

Tomando en cuenta el trasfondo histórico del descubrimiento de prueba en el campo penal y nuestro análisis de los requisitos dispuestos en la Regla 95-A de Procedimiento Criminal, denegaríamos la solicitud del Ministerio Público.

La cinta magnetofónica que el Ministerio Público solicita descubrir no constituye prueba sustantiva que, de ordinario, la defensa utiliza durante el juicio. La grabación de las declaraciones de los testigos del Ministerio Público en la vista preliminar no significa que esas declaraciones serán utilizadas como prueba sustantiva de la defensa en el juicio. Se trata más bien de un mecanismo para preservar la prueba presentada en la vista

---

invoque la doctrina para impedir el descubrimiento de prueba para poder realizar un crimen o un fraude. E. S. Epstein, et al., *op. cit.*, pág. 149.

[16] La inmunidad bajo la doctrina de "work product" puede ser renunciada. Se entiende que así lo ha hecho el abogado cuando éste presenta la evidencia protegida por la inmunidad como prueba durante el juicio. *Véase* B. E. Bergaman, *op. cit.*, §§ 11:32-11:33, págs. 108-11; E. S. Epstein, et al., *op. cit.*, págs. 139-53; U.S. v. Nobles, *supra*, pág. 230.

preliminar en caso de que sea necesaria para etapas posteriores, lo cual está permitido por nuestra jurisprudencia y por nuestras Reglas de Procedimiento Criminal[17], tal como cuando la defensa utiliza la grabación para impugnar el testimonio que presta un testigo de cargo durante el juicio. También es un vehículo apropiado para que los abogados de defensa se preparen para los contra-interrogatorios de los testigos de cargo y para que puedan diseñar adecuadamente sus estrategias de litigio.[18]

Tampoco corresponde la grabación al tipo de evidencia que puede descubrir la fiscalía bajo el descubrimiento *quid pro quo*. Lo que recolectó la defensa en la cinta magnetofónica en el presente caso no es evidencia demostrativa sino declaraciones, que como expusimos están fuera del alcance de la regla. Por otro lado, la grabación es materia protegida por la inmunidad de la labor legal del abogado que no puede ser descubierta a menos que existan circunstancias extraordinarias, que no están presentes en este caso. Además, en este caso no podemos hablar en propiedad de descubrimiento de prueba ya que lo que solicita o intenta descubrir la Fiscalía es la grabación **de sus propios testigos** cuyo testimonio conoce o debe conocer. En palabras simples, **no se puede descubrir lo que ya se conoce.**

Por otra parte, permitir que se descubra este tipo de evidencia desalentaría que la defensa grabara los

---

[17]   Véase <u>Pueblo v. Hernández Santiago</u>, 97 D.P.R. 522, 535-36 (1969); Regla 200 de Procedimiento Criminal de Puerto Rico, 34 L.P.R.A. Ap. II R. 200 (2004).

[18]   *Véase* Advisory Committee on Pretrial Proceedings, <u>ABA Project on Minimum Standards for Criminal Justice: Standards Relating to Discovery and Procedure before Trial</u>, American Bar Association, pág. 31 (1970); L. E. Orfield, *op. cit.*, Vol. 2, § 16:8, pág. 514.

procedimientos en vista preliminar, que todavía hoy día no son grabados oficialmente.  No existe razón alguna, ni siquiera un argumento de política pública, que nos lleve a concluir que la grabación en controversia debe ser descubierta al Ministerio Público. Nuestras reglas de descubrimiento, a pesar de ser sumamente liberales, no alcanzan lo que pretende el Ministerio Público en este caso.

Por todo lo anterior, resolvería que la grabación de los testimonios vertidos en la vista preliminar que hizo la defensa del peticionario no debe ponerse a la disposición del Ministerio Fiscal en esta etapa de los procedimientos.  No siendo ese el resultado de la deliberación de este Tribunal, disiento.


Liana Fiol Matta
Jueza Asociada