[1] Clifton Johnson v. International Refining Manufacturing Company d/b/a IRMCO, et al. (CV-04-6), is one of five cases pending in the Fayette Circuit Court involving the same defendants. The other four are: (1) Reveland Weir v.International Refining Manufacturing Company d/b/a IRMCO,et al. (CV-04-30); (2) Paul Cordell v. InternationalRefining Manufacturing Company d/b/a IRMCO, et al.
(CV-04-31); (3) Barbara Locke v. International Refining Manufacturing Company d/b/a IRMCO, et al. (CV-04-32); and (4) Gary Tucker v. International Refining Manufacturing Company d/b/a IRMCO, et al. (CV-04-33).
International Refining Manufacturing Company d/b/a IRMCO ("IRMCO") and Minster Machine Company ("Minster") are 2 of more than 20 defendants (collectively "the defendants") in 5 separate actions filed in the Fayette Circuit Court by Clifton Johnson, Reveland Weir, Paul Cordell, Barbara Locke, and Gary Tucker (collectively "the plaintiffs"). IRMCO and Minster represent all the defendants in this petition for a writ of mandamus asking this Court to direct the trial court to vacate its discovery order of March 27, 2006. For the reasons stated below, we deny the petition.
 Facts and Procedural History
The plaintiffs were employees at a now closed plant that was formerly operated by Arvin-Meritor, Inc. ("Arvin"). The plaintiffs have asserted claims in the Fayette Circuit Court against the defendants seeking damages related to the defendants' supply of goods or services at the Arvin plant.
During 2005 the plaintiffs and the defendants subpoenaed records from Arvin, a nonparty to the litigation, pursuant to Rule 45, Ala. R. Civ. P. Arvin possessed approximately 350 bankers boxes of documents that contained materials potentially responsive to the subpoenas.
As permitted under Rule 45(d), Ala. R. Civ. P., Arvin elected to produce the subpoenaed records in the form in which they were kept in the ordinary course of business.[2] *Page 1086 
Counsel for IRMCO (acting on behalf of all the defendants) sent Arvin a letter on September 7, 2005, confirming that the following procedures would apply to Arvin's production of the records:
 "1. . . . Plaintiffs and Defendants are both invited to review documents [during the weeks of September 12 and 19, 2005, at Arvin's headquarters in Troy, Michigan]; the parties will be separated in different rooms for purposes of reviewing the documents. . . .
 "2. Defendants will be allowed to arrange for [a contractor] to scan the documents that Defendants flag for copying/scanning, and these documents will be copied/scanned and all flags removed prior to the particular box of documents being made available to Plaintiffs' counsel. . . .
 ". . . .
 "4. You have agreed that Plaintiffs' counsel will not be allowed to review the documents copied/scanned by Defendants (either prior to flags being removed or after the documents are scanned/copied) without Defendants' prior approval and opportunity to present this issue to [Fayette Circuit] Judge Moore for resolution as to the attorney work product issue. . . .
 ". . . .
 "6. In an effort to coordinate the document review, you will arrange for the bulk of the [350] boxes to be available to Defendants in the room to which they are assigned. The remainder of the documents will be in the room to which Plaintiffs' counsel is assigned. At the designated change-over time, Plaintiffs' counsel will then switch rooms with Defendants' counsel to review the documents in the respective other room. . . ."
IRMCO's lawyer sent a copy of the September 7, 2005, letter to fellow defense counsel, but not to counsel for the plaintiffs.[3]
The simultaneous production to the plaintiffs and the defendants transpired as planned at Arvin's headquarters in Michigan. By the conclusion of that process, the plaintiffs and the defendants had received access to Arvin's documents and had selected the subset of records they desired copied, but the plaintiffs were unaware which documents the defendants had selected. The defendants designated approximately three to five percent of the documents made available (i.e., more than 10 boxes) for copying and scanning. The plaintiffs designated thousands of pages for copying.
After the production, Arvin required the defendants and the plaintiffs to furnish Arvin a list of the subset of documents that they had selected. The defendants provided that list to Arvin in the form of a compact disk or disks. On October 28, 2005, the plaintiffs filed notice of intent to subpoena Arvin, seeking production of a "copy of the [compact disk or disks] provided to [Arvin] by all defendants [arising from the September 2005 document production]." On November 7, *Page 1087 
2005, the defendants objected to issuance of the subpoena on the grounds that the "information and documents sought by [p]laintiff[s] constitutes the mental impressions, conclusions, opinions, and/or legal theories of the attorneys defending [the defendants . . ., and therefore the disclosure of such information and documents would violate the attorney work-product doctrine."
Citing Rule 45(a)(3)(D), Ala. R. Civ. P., the plaintiffs on November 23, 2005, responded to the defendants' objection to the subpoena by filing a motion to compel the defendants to produce the subset of documents the defendants had received from Arvin. On November 30, 2005, the trial court granted the plaintiffs' motion to compel in an order stating that "the defendants [should] produce copies of all documents collected from non-party Arvin Meritor to plaintiffs' counsel within fourteen days." The defendants moved on December 5, 2005, for reconsideration of the November 30 order.
A hearing on the defendants' motion was held on January 5, 2006. At that hearing, the trial court stated that it had "[g]ranted [the plaintiffs' motion to compel] by mistake" and heard arguments concerning the defendants' assertion of the work-product privilege. The trial court entered an order on March 27, 2006, stating:
 "Subpoenas pursuant to Alabama Rules of Civil Procedure 45 were served on non-party, Arvin-Meritor, Inc. by the defendants. The defendants object to the production of the subpoenaed documents arguing that plaintiffs had been provided with the same materials that were provided to the defendants in the same format and that the documents are privileged according to the attorney work product doctrine. It is the defendants' position that the drafters of Rule 45 `could not have contemplated this use of the Rule in this situation.'
 "None of the parties provided any authority on point with this fact situation. However a plain reading of [Rule 45(a)(3)(D)] provides that `if the party serving the subpoena obtains copies of documents or things, that party shall make available [a] duplicate of such copies at the request of any other party upon the payment of the reasonable cost of making such copies.'
 "Accordingly, it is ordered, adjudged and decreed that [p]laintiffs' Motion to Compel Production of Subpoenaed Documents is and it is hereby granted and it is ordered that the [defendants produce copies of all documents obtained from non-party Arvin Meritor to [plaintiffs' counsel within twenty-one (21) days from the entry of this Order. . . ."
The defendants petitioned this Court on April 26, 2006, for a writ of mandamus directing the trial court to vacate its March 27, 2006, order.
 Standard of Review
In Ex parte Norfolk Southern Ry., 897 So.2d 290
(Ala. 2004), this Court delineated the limited circumstances under which review of a discovery order is available by a petition for a writ of mandamus, and the standard of that review in light of Ex parte Ocwen Federal Bank, FSB,872 So.2d 810 (Ala. 2003):
 "`Mandamus is an extraordinary remedy and will be granted only when there is "(1) a clear legal right in the petitioner to the order sought, (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so, (3) the lack of another adequate remedy, and (4) properly invoked jurisdiction of the court." Ex parte Alfab, Inc., 586 So.2d 889, 891 (Ala. 1991). In Ex parte Ocwen Federal Bank, FSB, *Page 1088 872 So.2d 810 (Ala. 2003), this Court announced that it would no longer review discovery orders pursuant to extraordinary writs. However, we did identify four circumstances in which a discovery order may be reviewed by a petition for a writ of mandamus. Such circumstances arise (a) when a privilege is disregarded, see Ex parte Miltope Corp., 823 So.2d 640, 644-45 (Ala. 2001); (b) when a discovery order compels the production of patently irrelevant or duplicative documents the production of which clearly constitutes harassment or imposes a burden on the producing party far out of proportion to any benefit received by the requesting party, see, e.g., Ex parte Compass Bank, 686 So.2d 1135, 1138
(Ala. 1996); (c) when the trial court either imposes sanctions effectively precluding a decision on the merits or denies discovery going to a party's entire action or defense so that, in either event, the outcome of the case has been all but determined and the petitioner would be merely going through the motions of a trial to obtain an appeal; or (d) when the trial court impermissibly prevents the petitioner from making a record on the discovery issue so that an appellate court cannot review the effect of the trial court's alleged error. The burden rests on the petitioner to demonstrate that its petition presents such an exceptional case — that is, one in which an appeal is not an adequate remedy. See Ex parte Consolidated Publ'g Co., 601 So.2d 423, 426
(Ala. 1992).'"
897 So.2d at 291-92 (quoting Ex parte Dillard Dep'tStores, Inc., 879 So.2d 1134, 1136-37 (Ala. 2003)). Here the defendants argue that the trial court's March 27, 2006, order granting the plaintiffs' motion to compel violates their attorney-work-product privilege. Because a privilege was allegedly disregarded, a petition for a writ of mandamus is the means by which to seek review of the trial court's discovery order.
 Analysis
The parties raise two issues in this proceeding: (a) whether the petition for the writ mandamus was timely filed, and (b) whether the attorney-work-product privilege applies with respect to the defendants' selection of documents produced by Arvin in light of Rule 45(a)(3)(D), Ala. R. Civ. P.?
 1. Timeliness
Rule 21(a)(3), Ala. R.App. P., provides:
 "The petition [for the writ of mandamus] shall be filed within a reasonable time. The presumptively reasonable time for filing a petition seeking review of an order of the trial court or of a lower appellate court shall be the same as the time for taking an appeal. If a petition is filed outside this presumptively reasonable time, it shall include a statement of circumstances constituting good cause for the appellate court to consider the petition, notwithstanding that it was filed beyond the presumptively reasonable time."
Rule 4(a)(1), Ala. R.App. P., provides that a notice of appeal for an appeal as of right shall be filed within 42 days of the judgment or order from which relief is sought.
Here, the defendants filed their petition on April 26, 2006, well within 42 days of the trial court's March 27, 2006, order granting the plaintiffs' motion to compel. The plaintiffs argue, however, that the "presumptively reasonable time" for filing the petition began to run on November 30, 2005 — the date the trial court initially granted their motion to compel. If November 30, 2005, is the operative date for calculating the "presumptively reasonable time," the petition was clearly filed more than 42 days after that date. Further, the *Page 1089 
plaintiffs argue that the defendants' filing of the motion for "reconsideration" did not affect the defendants obligation to petition this Court within 42 days of November 30, 2005. The plaintiffs cite Ex parte Troutman Sanders, LLP,866 So.2d 547, 550 (Ala. 2003), in support of their position. This Court held in Troutman that, unlike a motion filed pursuant to Rule 59(e), Ala. R. Civ. P., to "alter, amend, or vacate" a judgment, a motion for reconsideration of an interlocutory order does not toll the time for filing a petition for a writ of mandamus seeking review of such an order. 866 So.2d at 550.
We conclude that the petition for the writ of mandamus was filed within a "reasonable time" within the meaning of Rule 21(a)(3), Ala. R.App. P. The trial judge stated at the January 5, 2006, hearing on the defendants' motion for reconsideration, that, when he granted the plaintiffs' motion to compel on November 30, 2005, he acted "by mistake." At that hearing, the trial court then considered arguments of counsel considering the merits of the defendants' claim that disclosure of the requested documents was protected by the attorney-work-product privilege. Under these circumstances, the trial court effectively withdrew its November order at the January 5, 2006, hearing. In light of the trial court's reconsideration of the motion to compel, the subsequent March 27, 2006, order granting the motion to compel, and the filing of this petition 30 days following the entry of that order, we conclude that the defendants' petition for the writ of mandamus was filed within a reasonable time under the provisions of Rule 21(a)(3), Ala. R.App. P.
 2. Attorney-Work-Product Privilege
The defendants contend that the trial court's order compelling them to produce the subset of documents the defendants selected for copying from Arvin's records violates their attorney-work-product privilege. That argument is based on Rule 26(b)(3), Ala. R. Civ. P., which, in pertinent part, provides as follows with respect to materials developed in the course of preparing for trial:
 "(3) Trial Preparation: Materials. . . . [A] party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation."
(Emphasis added.) Counsel for the defendants argue that, when they selected a subset of the Arvin documents for copying, that selection process was completed using their "mental impressions, conclusions, opinions and legal theories" concerning the litigation (hereinafter "opinion work product"). Accordingly, the defendants argue, disclosure to the plaintiffs of the copies of the records the defendants' obtained from Arvin would violate the opinion-work-product privilege encompassed in Rule 26(b)(3).
The parties do not cite, nor have we found, any prior Alabama decision that has considered whether documents selected by counsel are protected from discovery as *Page 1090 
opinion work product. Counsel for the parties, however, have cited several cases in which federal courts have considered the "selection-and-compilation doctrine." The defendants rely particularly on two decisions — Sporck v. Peil,759 F.2d 312 (3d Cir.1985),[4] and Shelton v. AmericanMotors Corp., 805 F.2d 1323 (8th Cir.1986)[5] — in support of their position that Alabama should recognize the selection-and-compilation doctrine. Relying extensively onIn re San Juan Dupont Plaza Hotel Fire Litigation,859 F.2d 1007 (1st Cir.1988), the plaintiffs argue that identification by counsel of nonprivileged records produced by a third party cannot justifiably have been expected by the defendants' counsel to remain private and to constitute opinion work product.[6]
Here, we do not determine whether the selection of a subset of records subpoenaed from a nonparty constitutes protected work product because we find that production of the records so selected is mandated by the clear, unambiguous language of Rule 45(a)(3)(D), Ala. R. Civ. P. Arvin produced records in response to a subpoena issued by the defendants pursuant to Rule 45, Ala. R. Civ. P. Rule 45(a)(3)(D) states that "[i]f the party serving the subpoena obtains copies of documents or things, that party shall make available a duplicate of such copies at the request of any other party upon payment of the reasonable cost of making such copies." Rule 45(a)(3)(D) was adopted in 1995. The "Committee Comments to the October 1, 1995, Amendment to Rule 45" state that *Page 1091 
the subject of Rule 45(a)(3)(D) was formerly covered by Rule 34 and that the 1995 amendment was intended to maintain "the obligation of the party obtaining the discovery [from a nonparty] to make copies available to other parties at a reasonable cost."
The defendants make three arguments in their efforts to avoid the clear language of Rule 45(a)(3)(D). First, according to the defendants, the goal of Rule 45 is to ensure that all parties have access to those documents furnished by a nonparty in response to a subpoena. The defendants argue that Rule 45(a)(3)(D) was not intended to cover a situation such as this one, where the plaintiffs had access to the same records Arvin provided to the defendants. Second, the defendants argue that Rule 45(a)(3)(D) should be read in concert with Rule 26(b)(3) and should not defeat their alleged opinion-work-product privilege. They argue that nowhere does Rule 45 grant the plaintiffs the right to attend a document production like that in Michigan and then to later obtain the defendants' alleged opinion work product. Finally, the defendants contend that the plaintiffs waived the benefit of Rule 45(a)(3)(D) by participating in the document-review process at which all parties designated a subset of records for copying.
The defendants' arguments are without merit. We agree with the trial court and the plaintiffs that, as written, the plain language of Rule 45(a)(3)(D) applies and requires the defendants to provide the plaintiffs a "duplicate of such copies" that the defendants obtained from Arvin. The exception to 45(a)(3)(D) urged by defendants — that the rule is inapplicable because the subset of disputed records was "made available" to the plaintiffs in the documents produced by Arvin — is simply not contained or suggested in the language of the rule. Such an exception could perhaps be incorporated in an amendment to Rule 45. The role of this Court, however, is to interpret the rule according to its plain meaning.[7]
Further, Rule 45(a)(3)(D) does not provide that the procedure in that rule is limited by the protection of opinion work product. Instead, Rule 45(a)(3)(D) states that the party obtaining copies of documents and things from a nonparty pursuant to Rule 45 "shall make available a duplicate of such copies at the request of any other party. . . ." (emphasis added).[8] Because opinion work product potentially is involved whenever a party selects a portion of subpoenaed records for copying, the position argued by the defendants could severely limit the application of Rule 45(a)(3)(D).
Finally, the defendants' argument that the plaintiffs waived the benefit of Rule 45(a)(3)(D) is also without merit. The plaintiffs did participate in the document production in Michigan where all parties separately reviewed the Arvin records and selected a portion of those records *Page 1092 
for copying. The mechanics of that process were confirmed in the September 7, 2005, letter from IRMCO's counsel to an Arvin representative. However, plaintiffs' counsel was not a signatory or recipient of that letter. Under these circumstances, there is no credible evidence in the record indicating that the plaintiffs waived the benefit of Rule 45(a)(3)(D).
 Conclusion
The defendants have not demonstrated a "clear legal right" to the issuance of the writ of mandamus. The trial court properly interpreted and applied Rule 45(a)(3)(D) when it ordered the defendants to furnish the plaintiffs a duplicate of the subset of records the defendants copied from the records Arvin supplied. For the reasons stated above, the petition is denied.
PETITION DENIED.
LYONS, WOODALL, SMITH, and PARKER, JJ., concur.
[2] Rule 45(d)(1) provides that a nonparty recipient of a subpoena for records may respond either by producing the records in the form in which they are ordinarily maintained or by selecting, organizing, and labeling them by the categories specified in the subpoena.
[3] The defendants entered into a joint-defense agreement that apparently provided for cooperation between defense counsel on matters of common interest.
[4] In Sporck, the defendants produced hundreds of thousands of documents to the plaintiff during discovery. In preparation for a deposition of one of the defendants, counsel for the defendants selected a subset of those documents to show the deponent. Subsequently, during the deposition, counsel for the plaintiff asked the deponent what documents he had reviewed in preparation for the deposition. The defendants objected to that question on the basis that disclosure of the documents selected by defendants' counsel concerned the mental impressions of counsel on legal issues in the case, and, therefore, was protected from discovery by Rule 26(b)(3), Fed.R.Civ.P.759 F.2d at 314. Two of the three judges sitting in Sporck
agreed with the defendants that the selection and compilation of documents in preparation for a deposition constituted opinion work product that was shielded from discovery.759 F.2d at 316.
[5] In Shelton, an in-house attorney for AMC was deposed by plaintiffs counsel in a products-liability action. Before the deposition, the in-house attorney had reviewed AMC's business files to select and compile documents related to the litigation. At her deposition, the in-house attorney was asked whether she had knowledge about the existence or nonexistence of certain types of records concerning the allegedly defective automobile model. Asserting an opinion-work-product privilege, the deponent refused to answer. Noting that the in-house attorney's knowledge about AMC's records was acquired by her work on the litigation, the Court of Appeals for the Eighth Circuit agreed that the in-house attorney was not required to answer the questions concerning her knowledge of the defendant's records because such disclosure would "reveal counsel's mental impressions, which are protected as work product."805 F.2d at 1326.
[6] The complex, multidistrict litigation in SanJuan concerned thousands of actions that were consolidated for discovery. In order to expedite discovery, the trial court required all parties who intended to question a deponent to disclose in advance of the deposition any exhibit that would be used in questioning a deponent. Counsel for both plaintiffs and defendants complained that such disclosure violated the opinion-work-product privilege. The Court of Appeals for the First Circuit acknowledged that the selection of documents involved the mental impressions of an attorney, but distinguished Sporck and held that the predeposition identification of exhibits "d[id] not implicate opinion work product and thus d[id] not constitute an impermissible per se intrusion into the lawyer's protected zone of privacy."859 F.2d at 1018.
[7] Although the federal and state versions of Rule 45 are similar, there is no federal counterpart to Rule 45(a)(3)(D), Ala. R. Civ, P. Accordingly, the federal authorities cited by the defendants are not apposite.
[8] Rule 45(a)(3)(D) is, of course, not the only provision in the Alabama Rules of Civil Procedure requiring counsel potentially to reveal a portion of his or her opinion work product. There are many stages in litigation at which the "mental impressions, conclusions, opinions and legal theories" of counsel are to be disclosed. An attorney's opinion work product is revealed in pleadings, when an attorney files, briefs, and argues dispositive motions, and when an attorney complies with pretrial orders. Also, legal strategies are divulged when an attorney identifies the exhibits he or she intends to introduce into evidence and the witnesses to be called at trial.