Alice K. Martin, probate judge, Calhoun County, as respondent.
On Application for Rehearing
THOMPSON, Presiding Judge.
This court's opinion of February 2, 2018, is withdrawn, and the following is substituted therefor.
M.M.S. ("the mother") petitions this court for writs of mandamus directing the Calhoun Probate Court ("the probate court") to vacate its interlocutory decrees of May 9, 2017, regarding custody of her two minor children ("the children") and to vacate its interlocutory orders of May 15, 2017, barring removal of the children from the probate court's jurisdiction or from Lee County, where the children live with their foster parents, E.S.H. and S.M.H. ("the foster parents"). The mother also challenges the probate court's jurisdiction to enter the May 9, 2017, decrees and May 15, 2017, orders.
The materials before this court indicate the following. On June 12, 2015, the Calhoun Juvenile Court ("the juvenile court") entered orders finding the children dependent and placing the children in shelter care pursuant to the allegations of the Calhoun County Department of Human Resources ("DHR"). The reason for the dependency finding is not included in the materials before us. According to the mother's mandamus petitions, DHR then placed the children with the foster parents. The children have been residing with the foster parents since June 2015. DHR has retained legal custody of the children since the shelter-care orders were entered.
On October 26, 2016, the children's guardian ad litem filed in the juvenile court a petition for the termination of the mother's parental rights to the children ("the termination petition").[1] Subsequently, DHR sought to remove the children from foster care and place them with a relative in Texas, effective in May 2017. On May 8, 2017, the foster parents filed in the probate court a petition for adoption for each of the children. The adoption petitions indicated that "dependency/custody/termination of parental rights proceedings" were pending in the juvenile court and that, pursuant to orders of the juvenile court, DHR had legal custody of the children. The adoption petitions also indicated that there was no "placing agency" in these cases.[2]
*691 On May 9, 2017, the probate court entered an interlocutory decree for each child, awarding custody of each child to the foster parents. On May 15, 2017, the probate court entered an interlocutory order for each child directing that each child "shall not be removed from the jurisdiction of [the probate] court except as to their current residence in Lee County, Alabama."
Also on May 15, 2017, the mother filed in the probate court motions to set aside the interlocutory decrees and to dismiss the adoption actions. The mother argued that the juvenile court had jurisdiction over the children and that DHR retained legal custody of the children. Accordingly, the mother stated, the probate court did not have jurisdiction over the children. On May 17, 2017, the mother moved to set aside the May 15, 2017, interlocutory orders preventing the removal of the children from the probate court's jurisdiction. On May 19, 2017, the probate court ordered the parties to file briefs in the adoption actions. On June 6, 2017, the mother filed in the probate court motions contesting the adoption proceedings and supporting briefs. Nothing in the materials before us shows that the probate court ruled on any of the mother's various motions. On July 12, 2017, after a dispositional hearing, the juvenile court entered an order stating that the most appropriate permanent plan for the children was relative custody and/or adoption and that custody was to remain with DHR.
On September 13, 2017, the mother filed a motion for an immediate ruling in the probate court. On November 13, 2017, the probate court entered orders determining that it had original jurisdiction over the adoption actions, but it transferred the cases to the juvenile court for the limited purpose of determining whether to terminate the mother's parental rights. The probate court explicitly stated that it retained original jurisdiction of the adoption actions. Upon the completion of the termination proceedings, the probate court directed, the cases "shall be remanded" to the probate court for further proceedings. On November 27, 2017, the mother filed a petition for a writ of mandamus in this court addressing the May 9, 2017, interlocutory decree and the May 15, 2017, interlocutory order entered in each adoption action. The next day, November 28, 2017, this court consolidated the petitions ex mero motu.
"Mandamus is an extraordinary remedy. An appellate court will grant a petition for a writ of mandamus only when '(1) the petitioner has a clear legal right to the relief sought; (2) the respondent has an imperative duty to perform and has refused to do so; (3) the petitioner has no other adequate remedy; and (4) this Court's jurisdiction is properly invoked.' Ex parte Flint Constr. Co., 775 So. 2d 805, 808 (Ala. 2000) (citing Ex parte Mercury Fin. Corp., 715 So.2d 196, 198 (Ala. 1997) ). Review by mandamus is not appropriate where the petitioner has another adequate remedy, such as an appeal. Ex parte Jackson, 780 So.2d 681 (Ala. 2000) ; Ex parte Inverness Constr. Co., 775 So.2d 153 (Ala. 2000) ; Ex parte Walters, 646 So.2d 154 (Ala. Civ. App. 1994)."
Ex parte Amerigas, 855 So.2d 544, 546-47 (Ala. Civ. App. 2003).
The mother contends that the probate court erred in entering the interlocutory decrees of May 9, 2017, and the interlocutory orders of May 15, 2017, because, she says, the children were not placed with the foster family by a "placing agency" for the purpose of adoption. Therefore, she maintains, the statutory requirements set forth in § 26-10A-18, Ala. Code 1975, for *692 the entry of the interlocutory decrees and orders at issue had not been met.[3]
Although within a few weeks of the entry of the May 2017 interlocutory decrees and orders the mother filed motions seeking to set them aside, i.e., to have the probate court reconsider those decrees and orders, she did not file her petitions for a writ of mandamus seeking to vacate those decrees and orders until November 27, 2017, more than six months after the entry of the decrees and orders at issue.
"[U]nlike a postjudgment motion following a final judgment, a motion to reconsider an interlocutory order does not toll the presumptively reasonable time period that a party has to petition an appellate court for a writ of mandamus. Rule 21(a)(3), Ala. R. App. P., and Ex parte Troutman Sanders, LLP, 866 So.2d 547, 549-50 (Ala. 2003). Rule 21(a)(3), Ala. R. App. P., provides:
" 'The petition shall be filed within a reasonable time. The presumptively reasonable time for filing a petition seeking review of an order of a trial court or of a lower appellate court shall be the same as the time for taking an appeal. If a petition is filed outside this presumptively reasonable time, it shall include a statement of circumstances constituting good cause for the appellate court to consider the petition, notwithstanding that it was filed beyond the presumptively reasonable time.' "
Ex parte Onyx Waste Servs. of Florida, 979 So.2d 833, 834 (Ala. Civ. App. 2007).
The time for filing an appeal from a probate-court judgment in an adoption action is 14 days. § 26-10A-26(a), Ala. Code 1975; see also Ex parte W.L.K., 175 So.3d 652, 655-56 (Ala. Civ. App. 2015). Because the mother delayed more than six months in filing her petitions challenging the interlocutory decrees and orders, the petitions were not filed within a presumptively reasonable time.
"When a petition for a writ of mandamus has not been filed within a presumptively reasonable time, the petition 'shall include a statement of circumstances constituting good cause for the appellate court to consider the petition, notwithstanding that it was filed beyond the presumptively reasonable time.' Rule 21(a)(3), Ala. R. App. P. 'The filing of such a statement in support of an untimely petition for a writ of mandamus is mandatory.' Ex parte Fiber Transp. L.L.C., 902 So. 2d 98, 100 (Ala. Civ. App. 2004) (citing Ex parte Pelham Tank Lines, Inc., 898 So.2d 733, 736 (Ala. 2004), and Ex parte Troutman Sanders, 866 So.2d [547] at 550 [ (Ala. 2003) ] )."
Ex parte Onyx Waste Servs. of Florida, 979 So.2d at 835 (emphasis added).
The mother has not included a statement of good cause for not timely filing her mandamus petitions to this court. Because the petitions were not filed within a presumptively reasonable time and no statement providing good cause for this court to consider the petitions was filed, we must dismiss the mother's petitions to the extent they seek to challenge the reasons *693 for the trial court's entry of the interlocutory decrees and orders.
Because the petitions are untimely, we would ordinarily dismiss them in their entirety. However, the mother also asserted an issue challenging the probate court's jurisdiction to consider the adoption actions. In Ex parte K.R., 210 So.3d 1106, 1112 (Ala. 2016), our supreme court held that the untimeliness of a petition for a writ of mandamus was "insignificant" when the issue challenged a probate court's jurisdiction to enter interlocutory orders such as the decrees and orders at issue in this case. The K.R. court explained its holding, saying:
" '[W]e take notice of the lack of jurisdiction ex mero motu. See Ruzic v. State ex rel. Thornton, 866 So. 2d 564, 568-69 (Ala. Civ. App. 2003) (discussing the general rule that this court notices lack of jurisdiction ex mero motu and citing to several cases noting that rule).' Lawrence v. Alabama State Pers. Bd., 910 So.2d 126, 128 (Ala. Civ. App. 2004)."
210 So.3d at 1112. Accordingly, despite the untimeliness of the mother's petitions, we will consider her argument that the probate court did not have jurisdiction over the adoption actions.
The mother specifically argues that the probate court did not have jurisdiction over the issue of custody because, she says, there already were cases regarding custody of the children pending in the juvenile court. In her petitions, the mother cites Arthur v. State, 238 So.3d 1276 (Ala. Crim. App. 2017), for the proposition that "jurisdiction of one case cannot be in two courts at the same time." She contends that, because the juvenile court had obtained jurisdiction over the issue of the custody of the children first, the foster parents' actions in probate court could not proceed at the same time.
Caselaw indicates that foster parents have filed adoption petitions during the pendency of juvenile-court actions to terminate the parental rights of biological parents whose children are in the physical custody of foster parents. See, e.g., Ex parte A.M.P., 997 So.2d 1008 (Ala. 2008) ; J.A.W. v. G.H., 72 So.3d 1254 (Ala. Civ. App. 2011) (juvenile court did not have jurisdiction to enjoin foster parents from proceeding in adoption action in probate court).
Ex parte A.M.P. also involved a request to vacate an interlocutory order entered in an adoption action that was filed after a custody award had already been made by a juvenile court in a dependency action involving the same child. A.M.P. was the mother of a child who was in the legal custody of the State Department of Human Resources ("the State DHR") and who had been placed with foster parents who were not related to that child. Certain family members of that child sought custody in the juvenile court, but their custody petitions were denied, and that child remained in the physical custody of the foster parents. Other family members of that child approached the State DHR regarding being relative resources for adoption and began having weekend visitation with that child. The foster parents filed an adoption petition in the Cullman Probate Court. The Cullman Probate Court entered an interlocutory order granting the foster parents' adoption petition. A.M.P. filed a motion to set aside the interlocutory order on the ground that she had not consented to the adoption. The Cullman Probate Court denied the motion. The other family members also contested the adoption. Ex parte A.M.P., 997 So.2d at 1011-12.
A.M.P. filed a petition for a writ of mandamus in this court, seeking an order directing the Cullman Probate Court to set *694 aside its interlocutory order of adoption and to transfer the adoption petition to the juvenile court. While the mandamus petition was pending, the Cullman Probate Court entered a final judgment granting the adoption. A.M.P. sought a stay of that judgment and appealed the judgment to this court. The family members wishing to adopt that child sought a new trial in the Cullman Probate Court, but no order was entered on their motion. The family members also appealed the adoption judgment to this court. The mandamus petition seeking to set aside the Cullman Probate Court's interlocutory order and the appeals from the adoption judgment were consolidated and transferred to our supreme court pursuant to § 12-3-15, Ala. Code 1975. Id. at 1013.
Regarding A.M.P.'s petition for a writ of mandamus seeking to vacate the interlocutory order, our supreme court wrote:
"In the present case, the foster parents did not receive the child into their home for the purpose of adoption; instead, they were the foster parents of the child and initially received the child into their home for the purpose of serving as foster parents. However, [ A.M.P. ] did not file a motion with the Court of Civil Appeals for a stay of the interlocutory order. With no stay in place, the probate court had jurisdiction to continue the adoption proceedings."
Ex parte A.M.P., 997 So.2d at 1015 (emphasis added).
In these cases, the materials before us indicate that the mother sought a stay of the adoption actions in the probate court on June 6, 2017. On November 13, 2017, the probate court entered an order declaring that it had original jurisdiction of the adoption actions. The probate court transferred the actions to the juvenile court for the limited purpose of determining whether to terminate the mother's parental rights and stating that original jurisdiction was to remain with the probate court. When the juvenile court entered its judgment on the issue of the termination of parental rights, the probate court said, the actions were to be remanded to the probate court for further proceedings. The probate court did not grant a stay in the proceedings. The mother has not challenged the denial of her motion in her petitions, nor has she sought a stay in this court.
Because there is no stay in place, on the authority of Ex parte A.M.P. and the lack of any other legal authority prohibiting a probate court from considering an adoption petition while a dependency action regarding the same child is pending in a juvenile court, we conclude that the probate court had jurisdiction to proceed with the adoption actions, and we reject the mother's contention that the probate court did not have jurisdiction over the adoption actions because the juvenile court had already made a custody decision regarding the children. Thus, the mother's petitions are denied to the extent they challenge the probate court's subject-matter jurisdiction.
2170214-APPLICATION FOR REHEARING DENIED; OPINION OF FEBRUARY 2, 2018, WITHDRAWN; OPINION SUBSTITUTED; PETITION DISMISSED IN PART AND DENIED IN PART.
2170215-APPLICATION FOR REHEARING DENIED; OPINION OF FEBRUARY 2, 2018, WITHDRAWN; OPINION SUBSTITUTED; PETITION DISMISSED IN PART AND DENIED IN PART.
Pittman, Thomas, Moore, and Donaldson, JJ., concur.

The termination petition also sought the termination of the parental rights of the children's father. These petitions for a writ of mandamus pertain only to the mother.

The Alabama Adoption Code, § 26-10A-1 et seq., Ala. Code 1975, defines a "licensed child placing agency" as "[a]ny adoption agency that is licensed under the provisions of the Alabama Child Care Act of 1971 or any adoption agency approved by the Department of Human Resources." § 26-10A-2(6), Ala. Code 1975.

Section 26-10A-18 provides, in part:
"Once a petitioner has received the adoptee into his or her home for the purposes of adoption and a petition for adoption has been filed, an interlocutory decree shall be entered delegating to the petitioner (1) custody, except custody shall be retained by the Department of Human Resources or the licensed child placing agency which held custody at the time of the placement until the entry of the final decree and (2) the responsibility for the care, maintenance, and support of the adoptee, including any necessary medical or surgical treatment, pending further order of the court."